**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH GRECO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SUBGALLAGHER INVESTMENT TRUST,** | : | |
| **PATRICIA MOORE, Individually and as** | : | |
| **Trustee of SubGallagher Investment** | : | |
| **Trust, MICHAEL A. CASEY, SCOTIA** | : | |
| **INTERATIONAL OF NEVADA, INC, and** | : | |
| **MAX WARREN BARBER** | : | **NO. 19-2922** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                          **July 29, 2020**

Defendants SubGallagher Investment Trust ("SGIT") and Patricia Moore have moved to set aside the default judgment and the preliminary injunction entered against them.  They claim that their failure to respond to the complaint and the motion for default judgment was caused by their counsel's abandoning them.  As a result, they argue they were unable to assert defenses that they have.

We conclude that SGIT and Moore have no meritorious defenses, their conduct leading to the entry of the judgment was inexcusable, the plaintiff would be prejudiced if the judgment were opened, and there are no viable alternative sanctions.  Therefore, we shall deny the motion to set aside the default judgment and the preliminary injunction.

Plaintiff Joseph Greco's claims against SGIT and Moore arose out of SGIT's obligation to guarantee the return of a deposit Greco made to Scotia International of Nevada, Inc. ("SION").  When SION defaulted on its agreement with Greco and failed to return the deposit as required, SGIT did not honor its obligation to pay Greco.  He

contends these actions were part of a larger fraudulent scheme to scam him out of four million dollars involving all the defendants.

## Background

SION, as fiduciary, and SGIT, as guarantor, entered into a Financial Guarantee and a Bond Agreement in favor of Greco.  The agreements obligated SGIT to secure the return of the deposit to Greco in the event SION failed to return it.[1]  In the Financial Guarantee, SGIT promised to return the deposit to Greco within twenty-five days of receiving notice from Greco of SION's default.[2]  In the Bond Agreement, SGIT agreed to segregate at least four million dollars in liquid assets from its general pool of assets and ensure that these assets would not be encumbered, leveraged or otherwise depleted during the term of the guarantee.[3]  In connection with SGIT providing the Financial Guarantee and the Bond Agreement, Greco paid a bond broker a $280,000.00 bonding fee for SGIT to secure its bond and guarantee, portions of which went to SGIT.[4]

Greco claims that SGIT, Moore and the other defendants conspired to swindle him out of the four million dollar deposit and the $280,000.00 bonding fee by inducing him to enter into the Deposit Agreement and the Financial Guarantee and the Bond Agreement, creating contractual and fiduciary duties they had no intention of honoring.  He alleges that SGIT made fraudulent and misleading statements about its solvency and access to liquid assets.  He also contends that SGIT and Moore falsely represented that they would

---

[1] Financial Guarantee, dated Aug. 27, 2018 (Doc. No. 23-2 at ECF 4-5); Bond Agreement, dated Aug. 27, 2018 (Doc. No. 23-2 at ECF 2); Am. Compl. ¶¶ 21, 24.

[2] Financial Guarantee ¶ 3 (Doc. No. 23-2 at ECF 4); Am. Compl. ¶¶ 22, 24.

[3] Bond Agreement (Doc. No. 23-2 at ECF 2); Am. Compl. ¶¶ 25-26.

[4] Am. Compl. ¶ 23; Greco dep. (Doc. No. 114-4) at 194-95.

"earmark and segregate at least $4,000,000 in liquid assets"; and, instead they placed the assets overseas.[5]

Greco alleges that when he demanded the return of the deposit, SGIT and Moore falsely represented that SION had sufficient funds to return the deposit to him and that it would be returned promptly.  He claims that the defendants had no intention of complying with their obligations to return the deposit.[6]

Greco asserts causes of action for breach of contract against SION and Barber, breach of contract against SGIT, breach of fiduciary duty against SGIT and Moore, and fraud and civil conspiracy against SGIT, Moore and the other defendants.

The facts leading up to the entry of judgment are indisputable.  This action was filed on July 3, 2019.  SGIT and Moore were served on July 15, 2019.  Because no answer or entry of appearance was filed, the Clerk entered default at the request of Greco on August 13, 2019.  In the interim, Greco filed a motion for a preliminary injunction to prohibit SGIT and Moore from disposing of assets without court approval.

SGIT and Moore's appointed representative, Sherry Sims, participated in a conference before Magistrate Judge Jacob Hart on October 3, 2019.  Because liability was clear and they acknowledged it, SGIT and Moore agreed to pay the four million dollars due under the bond in two installments.  They promised to pay the first installment of one million dollars the following Monday and to pay the balance of three million dollars upon liquidation of a specific asset, a valuable mineral.  They also agreed to the entry of a preliminary injunction prohibiting them from transferring or otherwise encumbering any

---

[5] Am. Compl. ¶¶ 22, 30-32, 60, 67.

[6] *Id.* ¶¶ 37-43, 47-48.

assets until the judgment was satisfied.   On October 10, 2019, we entered an order granting Greco's motion for preliminary injunction and entered a preliminary injunction.

SGIT and Moore did not remit the initial payment or any other payment.   Given their failure to keep their promise, Greco moved for default judgment on October 14, 2019. SGIT and Moore were personally served with notice of the motion and hearing one week later.

A hearing on the motion for entry of judgment was held on October 29, 2019. Despite having been served with notice of the hearing, neither SGIT nor Moore appeared. Greco moved for judgment and requested damages on the breach of contract and breach of fiduciary duty counts only.[7]   He requested contractual damages in the amount of four million dollars together with pre- and post-judgment interest.   He did not seek punitive or consequential damages.   On October 30, 2019, we entered judgment in Greco's favor and against SGIT and Moore in the amount of $4,280,000.00.[8]

## Analysis

On November 20, 2019, attorneys entered an appearance for SGIT and Moore. At the same time, they moved to set aside the default judgment.

Federal Rule of Civil Procedure 55(c) permits a court to set aside an entry of default for good cause.   A court may grant relief from a judgment pursuant to Rule 60(b)(1).   In determining whether to set aside the entry of a default or default judgment, we must consider four factors: (1) whether the defendants have a *prima facie* meritorious defense;

---

[7] Pl.'s Br. in Support of Request for Entry of Default Judgment (Doc. No. 50-2) at 2.

[8] As the facts have developed, it is apparent that there is a conflict of interest in the same counsel representing Moore and SGIT going forward.

(2) whether lifting the default would prejudice the plaintiff; (3) whether the defendants' conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256–57 (3d Cir. 2008) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)); *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

*Meritorious Defenses*

SGIT and Moore contend that they have meritorious defenses.  They assert a lack of personal jurisdiction, lack of personal liability on Moore's part, unavailability of punitive damages on the breach of contract claim, and Greco's failure to state claims for fraud, breach of fiduciary duty, and conspiracy.  None of these asserted defenses are meritorious.  SGIT and Moore have no defense to the breach of contract and breach of fiduciary duty claims upon which the judgment was based.  Indeed, they do not raise any. Liability under the Financial Guarantee and the Bond Agreement is clear.

A defense is meritorious when the allegations in the defendant's answer, if established at trial, would "constitute a complete defense" to the action.  *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 137 (3d Cir. 2019) (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984)).  The defendant must set forth with "some specificity the grounds for his defense."  *Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) (quoting *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)).  Specific factual allegations that go "beyond simple denials or conclusory statements" are required.  *United States v. $55,518.05 in U.S. Currency*, 728 F.2d at 195.

With respect to their challenge to personal jurisdiction, SGIT and Moore waived it and consented to jurisdiction. At no time did they raise a lack of personal jurisdiction before Magistrate Judge Hart. On the contrary, Moore authorized Sims to represent SGIT and her in all proceedings "addressing, negotiating, resolving or defending all claims" filed by the plaintiff in the Eastern District of Pennsylvania.[9] In short, SGIT and Moore never raised the issue before or after appearing before Magistrate Judge Hart. Instead, they participated, without objection, in the proceedings before Magistrate Judge Hart. They agreed to the entry of the injunction and to pay Greco four million dollars. Thus, there is no merit to their belated lack of jurisdiction claim.

SGIT and Moore concede that Greco has adequately pled a breach of contract claim against SGIT. Their only dispute is that Greco is not permitted to claim punitive damages on a breach of contract claim.[10] Because the default judgment does not award punitive damages, this is not an issue.

SGIT and Moore also contend that Greco has failed to state a *prima facie* breach of fiduciary duty claim because they do not have a fiduciary relationship with him. They claim that the relationship between SGIT and Greco amounts to "nothing more than . . . an arms-length transaction" between two parties, with Moore serving only as trustee for SGIT.[11]

Under Pennsylvania law, a breach of fiduciary claim has the following elements: (1) the existence of a fiduciary relationship between the plaintiff and the defendant; (2)

---

[9] *See* Sept. 30, 2019 letter from Moore, Ex. SGIT-1 admitted at the Jan. 15, 2020 evidentiary hearing on the motion to set aside default judgment.

[10] Defs.' Br. in Support of Mot. to Set Aside Default Judgment (Doc. No. 68-1) at 12.

[11] *Id.* at 17-18.

the defendant's negligent or intentional failure to act in good faith and solely for the plaintiff's benefit in all matters for which the defendant was employed; and (3) the plaintiff was injured by the defendant's failure to act solely for the plaintiff's benefit. *Snyder v. Crusader Servicing Corp.*, -- A.3d --, 2020 WL 1283577, at *9 (Pa. Super. Mar. 18, 2020) (citing *Kirschner v. K & L Gates LLP*, 46 A.3d 737, 757-58 (Pa. Super. 2012)). A "[fiduciary] relationship exists when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms." *Commonwealth Dep't of Transp. v. E-Z Parks*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993). Unequal terms can exist where there is "an overmastering dominance on one side, or weakness, dependence or justifiable trust on the other." *Id.* The essence of a fiduciary relationship is "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *PTSI, Inc. v. Haley*, 71 A.3d 304, 311 (Pa. Super. 2013) (quoting *Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 218 (Pa. Super. 2012)).

Greco maintains that SGIT formed a fiduciary relationship with him because a "special confidence was reposed in SGIT to carefully maintain and secure [his] deposit by way of a solemn bond, as represented by its Financial Guarantee and Bond Agreement."[12] This included SGIT's promise to segregate at least four million dollars in liquid assets and ensure that those assets would not be encumbered, leveraged or otherwise depleted during the term of the guarantee.[13]

---

[12] Pl.'s Br. in Opp'n to Defs.' Mot. to Set Aside Default Judgment (Doc. No. 72) at 9-10.

[13] *Id.* at 8 (citing Am. Compl. ¶¶ 25-26).

Once SGIT agreed to segregate and earmark the four million dollars, Greco gave it control of the funds.  This created a fiduciary relationship because Greco placed his "trust and reliance" on SGIT, which had "a corresponding opportunity to abuse that trust for personal gain."  *See PTSI*, 71 A.3d at 311.  He was injured because SGIT breached its fiduciary duty to him.  Therefore, SGIT lacks a meritorious defense to Greco's breach of fiduciary duty claim.

Greco asserts a breach of fiduciary claim against Moore in both her capacity as trustee of SGIT and in her individual capacity.[14]  Moore does not assert a defense to his claim against her in her capacity as SGIT's trustee.  She takes issue only with Greco's claim holding her personally liable for actions she took as trustee.  While she acknowledges that a corporate officer may be held personally liable for participating in a wrongful act, she argues that the complaint does not allege sufficient facts to show she participated in the fraudulent scheme.[15]

Under Pennsylvania law, a trustee can be liable to a third party for a tort committed in the trustee's fiduciary capacity, "whether or not the trustee is personally liable for the claim."  20 Pa. C.S. § 7790(c).  A trustee can be held personally liable for commission of a tort when acting as a trustee if the trustee is "personally at fault."  *Id.* § 7790(b).

Greco argues that Moore can be held personally liable for SGIT's misfeasance on a participation theory.  He alleges that Moore, as SGIT's trustee and the sole person authorized to direct and conduct its activities, including the performance of its fiduciary

---

[14] Am. Compl. ¶¶ 3, 72-77.

[15] Defs.' Br. in Support of Mot. to Set Aside Default Judgment (Doc. No. 68-1) at 11.

duties, personally participated in SGIT's breach of its fiduciary duty.[16]  As alleged in the complaint, Moore personally made promises regarding the availability and extent of assets to support the guarantee.  Significantly, she assured Greco that the funds necessary to secure the guarantee would be segregated and not depleted or otherwise encumbered.[17]  That promise, when made, was false.  Moore, as the sole trustee, knew it was false.  She participated in the misrepresentations and the intentional dissipation of assets necessary to pay Greco.  Speaking for her, her appointed representative made representations to Magistrate Judge Hart that were untrue.  In short, the amended complaint alleges facts that Moore personally participated in the action that resulted in Greco's loss of four million dollars.  Therefore, Moore has failed to state a meritorious defense to the breach of fiduciary duty claim against her in her individual capacity.

Even if we found that Moore stated a meritorious defense to Greco's claim of personal liability for breach of her fiduciary duty, she has failed to allege a meritorious defense to his claim against her in her capacity as SGIT's trustee.  A meritorious defense must contain specific factual allegations that go "beyond simple denials or conclusionary statements" and constitute "a complete defense" to the action.  Because Moore has not even attempted to mount a defense to Greco's claim for breach of duty in her fiduciary capacity, she has not asserted a complete defense to the action.

SGIT and Moore also assert that Greco cannot recover punitive damages.  This argument is irrelevant.  The judgment does not include punitive damages.  The damages

---

[16] Pl.'s Br. in Opp'n to Defs.' Mot. to Set Aside Default Judgment (Doc. No. 72) at 10-11.

[17] Am. Compl. ¶¶ 25-26.

are what Greco is entitled to on the indisputable breach of contract and breach of fiduciary duty claims.

*Prejudice*

SGIT and Moore assert that Greco will suffer no prejudice if the judgment is opened.  They argue that any prejudice can be obviated by the imposition of other terms and conditions.  They offer none.

Greco will suffer prejudice.  The moving defendants have failed to make the payments they had promised to make.  At the conference before Magistrate Judge Hart, Sims represented that the trust has a single asset, a valuable mineral worth 39 million dollars.  Almost four months after promising to liquidate the asset, SGIT and Moore have not done so.  In the meantime, Greco has lost the opportunity to use the money that is his.  More importantly, SGIT and Moore may dissipate assets, leaving nothing to pay what is owed Greco.

The preliminary injunction has not protected Greco's interests.  SGIT and Moore have not offered any evidence that they are attempting to liquidate assets to pay the judgment or that they are available.  They have not asked for court approval to dispose of assets to pay Greco.  It appears they have no intention of paying him.

The Bond Agreement required SGIT to "segregate at least $4,000,000.00 in liquid assets . . . to specifically secure its obligations to [Greco] pursuant to the Guarantee."[18] It further agreed that it would ensure that its assets would not be "encumbered, depleted,

---

[18] Bond Agreement (Doc. No. 23-2 at ECF 2).

leveraged, monetized, pledged, transferred, assigned, or used as collateral in any way . . . ."[19]  It did not.

It is obvious that had SGIT fulfilled its obligation under the Bond Agreement by segregating at least four million dollars in assets, it could have paid the four million dollars that it agreed is owed Greco.  Because it did not pay Greco, it raises the probability that it has impermissibly dissipated or otherwise disposed of the assets it was required to set aside.

*Excusable or Culpable Conduct*

SGIT and Moore claim that their failure to respond to the complaint and the motion for default judgment is excusable because their counsel abandoned them.  They contend that they retained their original counsel on August 16, 2019, who entered his appearance on their behalf on October 2.  SGIT and Moore's claim that they were abandoned by counsel is as bogus as their representations that they had liquid assets sufficient to cover Greco's bond segregated from other assets.  The attorney whom they had retained to represent them resigned after they failed to provide him documentation verifying the location and the segregation of the assets.  Despite repeated requests, SGIT and Moore refused to cooperate with the attorney in mounting a defense and addressing the allegations of fraud.  It became apparent to him that Sims, who spoke on behalf and with the authority of both SGIT and Moore, repeatedly made false statements and was engaged in possible criminal conduct.  She also produced a sham letter about the valuable mineral.[20]

---

[19] *Id.*

[20] Harty Decl. (Doc. No. 70-1).  Notably, SGIT and Moore moved to strike the attorney's declaration as "immaterial" to the disposition of their motion to set aside the default judgment.  *See* Mot. of SGIT and

The attorney put SGIT and Moore on notice that he would not take any action on their behalf until they provided him with documents needed to refute Greco's claims. They did not. Instead, their behavior led him to believe that he had no choice but to withdraw his representation under Rules 1.2(d) and 1.16(b)(2) and (3) of the Pennsylvania Rules of Professional Conduct prohibiting an attorney from assisting and representing a client in conduct he knows is criminal or fraudulent.[21] In short, their attorney did not abandon them. After they refused to cooperate with him, he resigned, giving them ample notice to retain new counsel or seek time to do so. They did not.

The attorney notified them on October 23 that he was resigning as their counsel. Six days later, despite having been served with notice of the hearing on Greco's motion for default judgment, they failed to appear. Three weeks later, new counsel entered an appearance and moved to set aside the default judgment. They claim they were not able to procure new counsel to represent them at the hearing six days after their attorney had resigned. They knew they had no attorney. Yet, they failed to appear at the hearing to explain.

SGIT and Moore received notice of every motion that was filed, order that was entered and hearing scheduled. Greco argues that their repeated false promises to fulfill their obligations, including to Magistrate Judge Hart that they would pay one million dollars a few days after the October 3, 2019 conference, show that they are attempting to delay the resolution of this case.

---

Moore to Strike (Doc. No. 71). To the contrary, the declaration is relevant to our consideration of their culpable conduct.

[21] Harty Decl. (Doc. No. 70-1) ¶¶ 49-53.

SGIT and Moore's conduct is not excusable.  Their failure to comply with their obligations to cooperate with their attorney and to fulfill their promise to Magistrate Judge Hart to pay one million dollars a few days after the October 3, 2019 conference is culpable conduct.  The conduct was part of a pattern of delay that began before and continued after this action was filed.  It is evident that they sought to avoid the consequences of their lying about the existence of assets to pay Greco.

*Alternative Sanctions*

There are no alternative sanctions.  The judgment and the injunction have not protected Greco's interest or caused SGIT and Moore to pay him the four million dollars due under the Financial Guarantee and the Bond Agreement.  SGIT and Moore have ignored their obligations and have demonstrated that they have no intention of honoring them in the future.  Despite promising Magistrate Judge Hart that they would pay one million dollars the Monday following the conference, they did not.  Nor have they given any assurances that they will pay anything.  Significantly, they offer no alternative sanctions.  Instead, they argue there should be none.

**Conclusion**

SGIT and Moore have no meritorious defenses to Greco's claims.  They have no excuse for not acting timely to prevent the entry of the default judgment.  To relieve them of the judgment now would continue prejudicing Greco.  Therefore, we shall deny their motion to set aside the default and decline to grant them relief from the judgment.