FILED
2021 NOV 29
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOSEPH GRECO,<br><br>Plaintiff,<br><br>v.<br><br>SUBGALLAGHER INVESTMENT TRUST; PATRICIA MOORE, individually and as trustee of Subgallagher Investment Trust; MICHAEL CASEY; SCOTIA INTERNATIONAL OF NEVADA, INC.; and MAX BARBER;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO AMEND THE COMPLAINT**<br><br>Case No. 2:20-cv-00610-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court is plaintiff Joseph Greco's motion to amend his complaint. ECF No. 176. Among other changes, Greco proposes to add a new defendant, SION Trading FZE (SION FZE) under an alter ego theory of liability. Defendants Scotia International of Nevada, Inc. (SION) and Max Barber oppose the motion to amend. They argue that the alter ego allegations against SION FZE would be futile because the proposed complaint does not allege sufficient facts to support alter ego liability. The court concludes that the proposed alter ego theory of liability against SION FZE is not futile and GRANTS Greco's motion to amend his complaint.

## BACKGROUND

Greco alleges the following facts in his proposed amended complaint. In August 2018, Greco agreed to deposit $4 Million with SION. The purpose of the deposit was to provide confidence to prospective lenders and investors for a California-based agriculture business. In

connection with the deposit, Greco and SION executed a Deposit Agreement. Under the terms of the agreement, SION was required to return the $4 Million deposit within 30 days of Greco making such a request. The Deposit Agreement also required SION to return the deposit without any further action by Greco 366 days after the date on which the agreement was executed.

In April 2019, Greco gave notice that he was requesting the return of his deposit within 30 days. But SION did not return the money. Nor did SION return the $4 Million deposit 366 days after the Deposit Agreement had been executed.

Barber owns both SION and SION FZE. Barber, SION, and SION FZE all have the same physical address. Barber used an email address with the domain name "siontradingfze" in his communications regarding the Deposit Agreement. Both before and after Greco signed the Deposit Agreement, Barber represented to Greco that he and SION each had access to billions of dollars held by SION FZE. After SION failed to pay back the $4 Million deposit, Barber told Greco that SION's delay in returning the deposit was due to a burglary of his office that resulted in his banking accounts being blocked.

Greco sued SION, Barber, and three other defendants, seeking compensation for SION's failure to return the $4 Million deposit. Greco asserted claims for breach of contract, fraud, and civil conspiracy against SION and Barber. Greco now moves to amend the operative complaint to add allegations that SION FZE is an alter ego of both Barber and SION.[1] Greco attached a proposed amended complaint to his motion for leave to amend. Defendants Barber and SION oppose the motion to amend.

---

[1] Greco also proposed several other additions and refinements to the operative complaint. No defendant has objected to those proposed amendments.

## LEGAL STANDARD

"The court should freely give leave [to amend pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted). Defendants Barber and SION argue that the court should not grant leave to amend the complaint to add alter ego allegations against SION FZE because the proposed amendments are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001).

Thus, the question presented by Barber and SION's objection to granting leave to amend is whether the court would grant a motion to dismiss the alter ego allegations in Greco's proposed complaint. When considering a motion to dismiss, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions, and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ANALYSIS

I.  **PLEADING REQUIREMENTS FOR ALTER EGO LIABILITY**

The proposed amended complaint includes two distinct theories of alter ego liability against SION FZE: (1) traditional alter ego liability, or piercing the corporate veil, and (2) reverse piercing. Traditional alter ego liability "is an exception to the general rule that limits stockholders' liability for obligations of the corporation." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012). "If a party can prove its alter ego theory, then that party may 'pierce the corporate veil' and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity." *Id.* Shareholders may be held liable as alter egos of a corporation if the court finds that two elements are present:

> (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Id.* (citation omitted). The first element is called the "formalities requirement," while the second element is commonly known as the "fairness requirement." *Id.*

To determine whether the formalities requirement has been satisfied, courts applying Utah law consider seven factors:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; [and] (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders.

*Id.* at 636 (citation omitted). Although these factors may be useful considerations in determining whether the first element of alter ego liability has been satisfied, they are nonexclusive and should

not be treated as dispositive elements or a conclusive test. *Id.* There are no established factors to consider when deciding whether the second element (the fairness requirement) of the traditional alter ego test has been satisfied because this element "is simply an appeal to the conscience of the court and the court's equitable powers." *Id.* at 637.

Reverse piercing, on the other hand, permits a plaintiff to assert liability against a corporation (or other similar entity) for the acts of individual shareholders. *M.J. v. Wisan*, 371 P.3d 21, 35 (Utah 2016). In order to impose reverse-piercing liability on a corporation, the plaintiff must establish (1) "an abuse of the corporate form," (2) "that such abuse resulted in fraud or injustice," and (3) "reverse piercing is necessary to avoid an injustice (or in other words that the claimant lacks an adequate remedy at law)." *Id.* at 36. A court may also decline to allow reverse piercing if equitable considerations counsel against permitting alter ego liability. *Id.* (declining to permit reverse piercing because innocent beneficiaries of a charitable trust would have been adversely affected).

In order to adequately plead either traditional alter ego liability or reverse piercing, a plaintiff must allege facts supporting each essential element of the relevant test. Conclusory allegations that a defendant is an alter ego of another defendant are not sufficient. *United States v. Van Diviner*, 822 F.2d 960, 964 (10th Cir. 1987) (citing *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 647 (C.D.Cal.1983) for the proposition that "'[c]onclusory allegations of alter ego status' [are] insufficient to withstand [a] motion to dismiss"). Although a plaintiff need not conclusively prove alter ego liability at the pleading stage of the litigation, he or she must plead specific facts that would plausibly support each element of either traditional alter ego liability or reverse-piercing liability. *See ClearOne, Inc. v. PathPartner Tech., Inc.*, No. 2:18-CV-427-JNP-PMW, 2019 WL 12043493, at *5 (D. Utah Sept. 30, 2019) (concluding that the plaintiff had not adequately pled

alter ego liability because it had not alleged facts supporting the second element of the traditional alter ego test).

Here, the parties dispute whether Greco's proposed amended complaint adequately pleads alter ego liability against SION FZE. This dispute requires the court to answer two distinct questions: (1) whether Greco has pled facts supporting a claim that SION FZE is the alter ego of Barber and (2) whether Greco has pled facts supporting a claim that SION FZE is the alter ego of SION.

## II. GRECO HAS ADEQUATELY PLED A CLAIM THAT SION FZE IS AN ALTER EGO OF BARBER

The court must first determine whether Greco has alleged facts supporting his claim that SION FZE is an alter ego of Barber. Because Greco is asserting that a business entity should be held liable for the obligations of its owner, this is a reverse-piercing claim. Thus, Greco must show that Barber (1) abused the corporate form of SION FZE, (2) resulting in a fraud or injustice, and (3) that reverse piercing is necessary to avoid an injustice. *See Wisan*, 371 P.3d at 36.

First, Greco has pled facts that plausibly support the abuse-of-the-corporate-form element. Barber and SION FZE have the same physical address. Moreover, Barber communicated with Greco regarding the Deposit Agreement with an email address with the domain name "siontradingfze." Because SION FZE was not a party to the Deposit Agreement with SION, Barber's use of a SION FZE email account indicates that Barber may have viewed himself and SION FZE as one and the same. Finally, Greco alleges that Barber said that he had access to billions of dollars held by SION FZE. Viewing this allegation in the light most favorable to Greco's reverse-piercing claim, Barber's statement implies that he viewed assets held by SION FZE as functionally his own assets that he could use to secure Greco's $4 Million deposit.

6

Second, Greco has plausibly alleged that such an abuse of the corporate form resulted in fraud or injustice. As discussed above, Greco has alleged facts that would plausibly suggest that Barber represented that he and SION FZE were functionally the same. Arguably, Barber communicated this disregard of the distinction between himself and the business entity that he owned in order to fraudulently induce Greco to believe that his $4 Million deposit would be secured by the assets of SION FZE.

Third, absent the equitable remedy provided by reverse piercing, Greco may not have an adequate legal remedy for the recovery of his $4 Million deposit. Thus, Greco has adequately pled that reverse piercing is necessary to avoid an injustice.

The court notes that the facts alleged by Greco provide only thin support for his reverse-piercing claim against SION FZE. But the question before the court at this stage of the litigation is not whether the alleged facts would convince the court that alter ego liability is warranted. Greco need only allege facts that would plausibly support his reverse-piercing claim. The court concludes that the allegations of the proposed amended complaint meet this threshold pleading requirement. Accordingly, Greco's proposed claim that SION FZE is an alter ego of Barber is not futile.

### III. GRECO HAS ADEQUATELY PLED A CLAIM THAT SION FZE IS AN ALTER EGO OF SION

The next question before the court is whether Greco has alleged facts supporting his claim that SION FZE is an alter ego of SION. Greco does not allege that SION is a shareholder or owner of SION FZE or vice versa. Because traditional alter ego liability and reverse piercing both involve piercing the corporate veil between a corporation and its shareholders, neither of these theories provide a direct path for SION FZE to be held liable for the obligations of SION. But under the

7

facts alleged by Greco, there may be an indirect path to alter ego liability. Greco alleges that SION FZE and SION are both owned by Barber. The court has already determined that Greco has adequately alleged that SION FZE is an alter ego of Barber. Accordingly, if Greco has alleged facts plausibly supporting a claim that Barber is an alter ego of SION, Greco may be able to trace alter ego liability for SION's obligations first to Barber and then to SION FZE. The issue before the court, therefore, is whether the facts alleged in the proposed amended complaint plausibly support both elements of a claim that Barber is an alter ego of SION: the formalities requirement and the fairness requirement. *See Lowry*, 284 P.3d at 635.

First, Greco has pled facts that would plausibly support the formalities requirement of a traditional alter ego claim. SION and Barber shared the same physical address and SION apparently does not have sufficient funds to cover Greco's deposit. Moreover, Barber told Greco that SION was unable to return the deposit because his bank accounts had been blocked due to a burglary of his office. Viewing this allegation in the light most favorable to Greco's alter ego claim, this statement indicates that Greco's personal bank accounts were the same as SION's bank accounts. Finally, Barber told Greco that he had access to billions of dollars in assets held by SION FZE prior to the execution of the Deposit Agreement. This statement could be interpreted as an inducement for Greco to sign the Deposit Agreement because Barber would disregard SION's corporate form and personally guaranty the deposit. These facts would support the first, second, and seventh formalities factors endorsed by the Utah Supreme Court: undercapitalization of a one-man corporation, failure to observe corporate formalities, and the use of a corporation as a facade for the operations of the dominant stockholder. *See id*. at 636.

Second, Greco has alleged facts that would plausibly support the fairness requirement. Greco alleges that Barber induced him to enter into the Deposit Agreement by intimating that he

8

would disregard the corporate form of SION and guaranty the deposit with the vast assets he held in the name of SION FZE. If Barber implied such a promise, the court could conclude that "the observance of the corporate form would sanction a fraud" or "promote injustice." *See id.* at 635.

Accordingly, Greco has plausibly alleged that Barber was an alter ego of SION. And because the court has already determined that Greco has plausibly alleged that SION FZE is an alter ego of Barber, the potential exists for Greco to show that, through Barber, SION FZE is effectively an alter ego of SION. Thus, this alter ego allegation in the proposed amended complaint is not futile.

## CONCLUSION

The court rejects Barber's and SION's argument that Greco's proposed alter ego allegations against SION FZE are futile. And no other defendant has raised any other objections to Greco's motion for leave to amend the operative complaint in this action. Accordingly, the court GRANTS the motion to amend. Greco may file the proposed amended complaint attached to its motion by December 6, 2021.

DATED November 29, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge